UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| LARRY SMITH, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 14-55-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL SEPANEK, *Warden*, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Larry Smith, a federal inmate, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. R. 1. Smith contests (a) the United States Parole Commission's ("USPC") denial of his parole on May 20, 2013, and (b) the USPC's decision to schedule a reconsideration hearing after he has served an additional five years of his sentence. R. 1; R. 1-1. Smith's petition is denied because the parole board acted within its authority in making both of those decisions.

### BACKGROUND

On May 2, 1994, the Superior Court of the District of Columbia sentenced Smith to imprisonment for 20 years to life for three crimes: assault to kill while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. R. 7-1 (BOP sentence monitoring computation data). Four years later, while Smith was imprisoned, the USPC took over responsibility for making parole determinations from the D.C. Parole Board.

*See* D.C. Code § 24-131. Smith received an initial USPC hearing on February 25, 2008. R. 7-2 (parole hearing summary).

The USPC applied the federal parole guidelines then in effect for D.C. Code offenders, *see* 28 C.F.R. § 2.80, and assessed a range of 247 months to 259 months to be served before becoming eligible for parole, R. 7-2. Because Smith had only served 181 months, the USPC denied parole. Smith's reconsideration hearing was scheduled for February of 2011, three years later. *Id.*; R. 7-3 (notice of action). In the meantime, the District of Columbia District Court decided *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008). The *Sellmon* case held that the USPC's retroactive application of its current guidelines might violate the *Ex Post Facto* Clause of the Constitution, if said application "significantly increased" inmates' "risk of serving lengthier terms of incarceration" than they would have under the guidelines in effect when they committed their offenses. *Id.* at 92, 98. The USPC moved Smith's parole hearing up to 2010, and applied the D.C. Parole Board's 1987 Guidelines ("1987 Guidelines") under *Sellmon*. R. 7-4 (hearing summary).

At Smith's 2010 hearing, the examiner calculated Smith's point score at two,[1] which ordinarily indicates that parole should be granted. 28 D.C. Mun. Regs § 204.17 (1987). But the hearing examiner recommended that parole be denied based on Smith's history of violence. R. 7-4 at 3. Specifically, Smith committed murder in 1990, shot someone in the face seven times in August 1993, committed four separate assaults in 2002, and was convicted for possessing a weapon in 2008. *Id.* The examiner noted that, even though some

---

[1] Under the 1991 Policy Guidelines applicable when Smith committed the instant offense, Smith's four serious disciplinary infractions (including possession of a dangerous weapon and rioting) and three assaults in 2002 would not have been used to increase his point score at his initial hearing because they were too old. R. 7-8. The total score of two points included the addition of one point for new institutional misconduct for possessing a dangerous weapon, and a deduction of one point for program achievement. R. 7-4 at 2.

2

of the violent incidents were too old to be factored into Smith's point score, they suggested that his violent behavior had not decreased "despite . . . programming." *Id.* Therefore, Smith "remain[ed] a continued risk to the community warranting a decision above the guidelines." *Id.* at 2. The examiner recommended that Smith be denied parole. In addition, the examiner recommended that his reconsideration hearing occur in February of 2013, not the next year as suggested by the 1987 Guidelines. *Id.* (recommending annual rehearings). Smith was also told to complete "CODE/Challenge" programming intended to improve attitudes and social skills. *Id.* The USPC adopted the examiner's recommendations and notified Smith. R. 7-5 (notice of action). The Commission told Smith that he was "a more serious parole risk than shown by [his] point score" and a danger to public safety. *Id.* The Commission said Smith's "propensity to commit violence" justified both the denial of parole and a longer period before rehearing. *Id.*

Smith had a reconsideration hearing on February 28, 2013. R. 7-6. Smith's grid score was again two points—he had another recent disciplinary infraction for possessing a weapon (adding one point) but had participated in programming (deducting one point). *Id.* at 2. Smith had not completed the specific program that the Commission had recommended during the prior hearing. *Id.* at 3. Although Smith's guideline score again indicated that parole should be granted, the examiner recommended denial of parole and a rehearing in two years. *Id.* at 5. The executive reviewer agreed with the recommendation to deny parole, but recommended rehearing after five years instead of two. *Id.* The USPC adopted the executive reviewer's recommendation and informed Smith that his rehearing would occur in February of 2018. R. 7-7 (notice of action dated May 20, 2013). The Commission told

3

Smith that they found a reasonable probability that his release would endanger public safety. *Id.* The Commission again recited Smith's history of violent conduct, noted his recent disciplinary incident, and stated that he had not completed the recommended programming. *Id.* Smith then filed this habeas petition under 28 U.S.C. § 2241. R. 1.

## DISCUSSION

Smith's claims center around the transfer of paroling authority from the D.C. Board of Parole to the USPC under the 1997 Revitalization Act. *See Franklin v. D.C.*, 163 F.3d 625, 632 (D.C. Cir. 1998). The Act required the USPC to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also gave the USPC "exclusive authority *to amend or supplement* any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code § 24-1231(a)(1),(c) (1999), recodified as D.C. Code § 24-131(a)(1),(c) (2001) (emphasis added). The USPC adopted the D.C. Board of Parole's guidelines that were in effect from 1987 to 1998 ("1987 Guidelines"). The USPC made select revisions to those guidelines under its "amend and supplement" authority. *See* 28 C.F.R. § 2.70 (1999).[2] The 1987 Guidelines are described in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415–17 (D.C. Cir. 1996). In brief, these guidelines required the calculation of a "total point score" showing the risk level presented by the prisoner. *Id.*, *see also* D.C. Code § 24.204.1, et seq. If the score was two points or fewer at the initial hearing, the prisoner would be ordinarily be granted parole. *Id.* If the score was three or more points at the initial hearing, parole would ordinarily be denied and a rehearing scheduled. *Id.* At rehearings, a score of three (or fewer) points would

---

[2] The USPC's revisions added additional risk factors to the prisoner's "total point score;" and replaced the annual rehearing guideline with variable ranges (*e.g.*, 12 to 18 months) based on the prisoner's point score.

4

indicate that parole should ordinarily be granted. *Id*. But the parole board could depart from the guidelines' recommendation to grant or deny parole. *Id*. at 1416 n.2.

*Sellmon* held that the USPC's application of the amended regulations to offenders who committed their crimes before the transfer of authority to the USPC in 1998 might violate the *Ex Post Facto* Clause of the Constitution. *Sellmon*, 551 F. Supp. 2d at 66 (D.D.C. 2008). The USPC then promulgated the *Sellmon* Rule: the 1987 Guidelines should be applied to any offender who committed his crime between March 4, 1985 (the effective date of the 1987 Guidelines), and August 4, 1998 (the last day the D.C. Board exercised parole release authority). 74 Fed. Reg. 34688 (July 17, 2009) (interim rule, effective August 17, 2009) and 74 Fed. Reg. 58540 (November 13, 2009) (final rule) (codified in various sections at 28 C.F.R. Part 2).

## SMITH'S CLAIMS

Smith argues that the USPC failed to apply the 1987 Guidelines at his 2013 parole hearing, as required by the *Sellmon* Rule, when it denied him parole and scheduled his reconsideration hearing for a date five years later. Smith claims that the scheduling of his rehearing violated due process and the *Ex Post Facto* Clause because he had no notice that a five-year delay was possible. R. 1-1 at 6–7. Smith also contends that the USPC had no authority under the 1987 Guidelines to consider the evidence that it characterized as "negative institutional behavior" because (i) it was previously used to deny him parole and (ii) it occurred more than three years before his 2013 hearing. So Smith contends that he is entitled to parole. *Id.*

## ANALYSIS

### I. The USPC Appropriately Applied the 1987 Guidelines to Smith's Case.

Judicial review of the USPC's decision on a petition for writ of habeas corpus is extremely circumscribed. *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984); *see also Stevens v. Quick*, 678 A.2d 28, 31 (D.C. 1996) (courts do not review the merits of USPC's decision). The Court looks only for an abuse of discretion. As long as there is "a rational basis in the record for the Commission's conclusions embodied in its statement of reasons," the parole decision should be affirmed. *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987).

Smith claims that the USPC did not follow the 1987 Guidelines in denying him parole and an annual rehearing. R. 1. That claim fails. First, the record clearly shows that the board applied the 1987 Guidelines, not the federal parole rules, to calculate Smith's point score. *Compare* R. 7-4; R. 7-5; R. 7-6 at 2; R. 7-7, *with Ellis*, 84 F.3d at 1416 (describing the application of the 1987 Guidelines). Second, the 1987 Guidelines give the board discretion to depart from the point score in denying parole. *See* D.C. Code § 24-204(a) ("[T]he Board *may* authorize [an inmate's] release on parole . . . .") (emphasis added). In "unusual circumstances," the board can deny parole to an eligible candidate as long as it specifies its reasons in writing. 28 D.C. Mun. Regs. § 204.22 (1987); *Brown v. United States Parole Comm'n*, 02 Civ. 7639 (NRB), 2003 WL 194206, *4 (S.D.N.Y. Jan. 28, 2003) (citing 28 D.C. Mun. Regs. § 204.22 (1987)). The unusual cruelty of a crime and a reasonable probability that the prisoner's release would endanger the public qualify as unusual circumstances. *See Sellmon*, 551 F. Supp. 2d at 95; *White v. Hyman*, 647 A.2d 1175, 1179

(D.C. 1994).  Here, Smith's unusual cruelty to his victims and continued violent conduct were unusual circumstances allowing the parole board to deny him parole under the 1987 Guidelines.  Smith shot his victim in the face seven times.  R. 7-7; *see Hunter v. United States Parole Comm'n*, No. 1:10-CV-1594, 2011 WL 4528469, at *4 (M.D. Pa. Sept. 28, 2011) (holding that a non-lethal shot at point-blank range constitutes unusual cruelty to victim); *Barnard v. Poteat*, 271 F.Supp.2d 49, 51 (D.D.C. 2002) (holding that the point-blank shooting of two people, one of whom died, was unusually cruel)).  Smith's violent conduct continued, as evidenced by his incident reports.  R. 7-5.  The Commission concluded that there was a "reasonable probability that [Smith] [would] not obey the law and [his] release would endanger the public." *Id.*  Therefore, the denial of parole was warranted despite Smith's low point score.

    Third, the 1987 Guidelines permit the board to schedule rehearings outside of the ordinary one-year requirement.  The regulations state that "[w]hen the [b]oard denies parole and orders reconsideration for a person serving a maximum sentence of five (5) years or more, reconsideration shall ordinarily occur within twelve (12) months."  D.C. Mun. Regs. 28, § 104.2 (1987).  The board, however, "*may* order a parole reconsideration date *it determines to be appropriate*."  See *White*, 647 A.2d at 1179 (upholding board's authority to order a hearing after five years based on its determination of prisoner's impact on public safety) (emphasis added); *see also Hall v. Henderson*, 672 A.2d 1047, 1054 (D.C. 1996) (upholding decisions by the board to override the annual rehearing guideline); *Jones v. Braxton*, 647 A.2d 1116, 1117 (D.C. 1994).  In Smith's case, the USPC deviated from the

7

annual rehearing guideline because he was a significant risk to the community.  R. 7-4; R. 7-5; R. 7-6; R. 7-7.  The USPC had discretion to do so under the 1987 Guidelines.

## II.     The USPC Did Not Violate Smith's Due Process Rights.

Neither the District of Columbia parole statute nor regulations create a liberty interest that implicates the due process clause.  Release on parole is not a constitutionally-protected liberty interest inherent in the due process clause.  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  Any liberty interest in parole release must instead be found in the parole statute.  *Id.* at 8.  But it is well-settled that "there is no due process interest created by the District of Columbia's parole regulations."  *Brown*, 2003 WL 194206, at *4; *see also Blair-Bey v. Quick*, 151 F.3d 1036, 1047 (D.C. Cir. 1998); *Ellis*, 84 F.3d at 1415–20 (neither the Constitution nor the D.C. regulations create a liberty interest in parole); *McRae v. Hyman*, 667 A.2d 1356, 1357 (D.C. 1995) ("[T]he District's parole scheme . . . creates no liberty interest" in the granting of parole.).  Thus, Smith's due process claim fails as a matter of law.

## III.    Smith's *Ex Post Facto* Claim Lacks a Legal Foundation.

Smith also claims that the USPC's departure from the 1987 Guidelines violates the Constitution's *Ex Post Facto* Clause.  R. 1-1.  But Smith's *Ex Post Facto* Clause claim is also without a legal foundation.  First, the USPC followed the *Sellmon* Rule and applied the 1987 Guidelines to Smith's parole decision.  Second, Smith has no legal right to be released on parole because of his low point score.  Said differently, the USPC has discretion to deviate from the point score in certain circumstances.  As explained above, the 1987 Guidelines use discretionary language.  D.C. Code § 24-404(a).  A prisoner with a low point

8

score shall be granted parole *unless* the Board, *in its discretion*, "believes there is some other reason for not granting him parole." *See Ellis*, 84 F.3d at 1419 (emphasis added). In *Ellis*, the Board overrode a favorable point score because of the prisoner's cruelty to his victims and aggressive tendencies. *Id.*; *see also McRae*, 667 A.2d at 1356 (denial of parole affirmed, despite a favorable point score, of a repeat violent offender). No D.C. prisoner can justifiably claim that the board is required to parole him, whatever his point score. *See Greenholtz*, 442 U.S. at 9–10 ("[T]here is no set of facts which mandate a [parole release] decision favorable to the individual."). The USPC appropriately exercised its discretion to deny Smith's parole and specified the reasons for its decision. R. 7-5; R. 7-7.

**IV.     The USPC Appropriately Considered Smith's Institutional Misconduct to Deny Him Parole.**

Smith argues that the USPC erred in relying on his "institutional misconduct" to depart from the guidelines and deny parole. R. 1 at 8. He claims that the 1991 Policy Guidelines preclude the Commission from doing so. The 1991 Policy Guidelines define the "post-incarceration factors" that can affect a prisoner's point score under the 1987 Guidelines. R. 7-8 at 2 (1991 Policy Guidelines); R. 7-9 at 12, 47. The parole board can add a point for serious disciplinary infractions during the previous three years and deduct one point for "sustained achievement in . . . prison programs, industries, or work assignments." *Id.*; R. 7-9 at 48. The Commission appropriately excluded certain infractions from Smith's point score because they were too old. R. 7-4 at 2; R. 7-7. But Smith's infractions are relevant to the Commission's parole decision, even if they cannot be counted in his grid score under the 1991 Policy Guidelines. The USPC found Smith to be riskier than his point score suggested because of his long pattern and recent instance of assaultive conduct. R. 7-5;

9

R. 7-7. Smith was convicted of murder as a juvenile, committed assault with intent to kill only four months after being released, and possessed a weapon just months before his 2013 hearing. R. 7-7; *see* D.C. Code § 24-404(a) (allowing for "exception" if prisoner's release is "incompatible with the welfare of society"). The USPC reasonably found that Smith would be a public safety risk under the 1987 Guidelines.

## CONCLUSION

The USPC acted within its statutory and regulatory authority to deny Smith parole and schedule his rehearing for a date five years later under the 1987 Guidelines. The record fails to support Smith's claims that the USPC abused its discretion, denied him due process, or violated the *Ex Post Facto* Clause.

Accordingly, it is **ORDERED** that:

(1) Larry Smith's 28 U.S.C. § 2241 petition for a writ of habeas corpus, R. 1, is **DENIED**.

(2) This action is **DISMISSED** and **STRICKEN** from the Court's docket.

(3) A judgment will be entered contemporaneously.

This the 5th day of October, 2015.



Signed By:
*Amul R. Thapar* AT
United States District Judge